IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MAYLI SANCHEZ,<br><br>      *Plaintiff,*<br><br>v.<br><br>CHEROKEE BRICK AND TILE CO.,<br><br>      *Defendant.* | CIVIL ACTION NO.<br>5:23-cv-00072-TES |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Cherokee Brick and Tile Co.'s Motion to Dismiss [Doc. 3], asking the Court to dismiss Plaintiff's Complaint [Doc. 1] on multiple grounds.

### BACKGROUND

Plaintiff Mayli Sanchez alleges that she worked as a salesperson for Defendant from October 3, 2021, until her promotion to the Safety Department in June 2022. [Doc. 1, ¶ 6]. On June 6, 2022, Plaintiff and a co-worker, Urian Lyons, went on a date. [*Id.* at ¶ 7]. Following the date, Plaintiff informed Lyons that she did not intend to pursue a relationship with him. [*Id.*]. After that conversation, Plaintiff contends that Lyons began harassing her, including showing up at her other job with flowers. [*Id.*]. Plaintiff then blocked Lyons' phone number and stayed at a friend's house. [*Id.*].

Following these encounters, Plaintiff's manager learned about the situation and

reported it to Defendant's Human Resources department. [*Id.* at ¶ 8]. Plaintiff then met with her manager, Whitley Maddox, and Whitney Tanner. [*Id.*]. In that meeting, Plaintiff alleges that her superiors blamed her for "entertaining the notion of entering into a relationship with a co-worker/supervisor[.]" [*Id.*]. Further, Plaintiff contends that "she was repeatedly blamed for being the victim of Mr. Lyons' harassment." [*Id.*].

After that meeting, Defendant removed Plaintiff from her position in the safety department. [*Id.*]. Plaintiff's manager also told her that Mr. Lyons previously harassed another female employee in similar ways. [*Id.*]. Following these conversations, Kate Sams Peeve—the owner of Defendant Cherokee Brick—talked to Plaintiff and her supervisors. [*Id.*]. Peeve informed the group that Plaintiff would not be allowed back into the plant until "the situation calmed down a little." [*Id.*].

On September 2, 2022, Plaintiff became ill and missed work until September 8, 2022. [*Id.* at ¶ 10]. Plaintiff provided Defendant with a doctor's note for the absences. [*Id.*]. After returning to work on September 8, Plaintiff's computer and key fob stopped working. [*Id.* at ¶ 11]. Then, Plaintiff's manager called her into the office with Peeve and the head of sales, where Plaintiff was informed that she was being terminated for "allegedly creating a hostile work environment." [*Id.*]. Plaintiff contends that she received no further explanation, although she asked for clarification. [*Id.*].

Plaintiff filed this suit on February 22, 2023, asserting claims of discrimination and retaliation in violation of Title VII, along with state-law claims of negligent training,

supervision, retention, and failure to implement effective policies. *See generally* [Doc. 1]. On May 1, 2023, Defendant filed the instant Motion.

## LEGAL STANDARD

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an

3

entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at

545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## DISCUSSION

Plaintiff asserts claims arising under Title VII and Georgia law. The Court addresses each in turn.

### I. Title VII Claims

Title VII makes it unlawful for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to "discriminate against any individual . . . because he opposed any practice made unlawful by [this Act,] or because he has made a charge, testified, [or] assisted [with an investigation.]" 42 U.S.C. § 2000e-3(a).

Defendant initially presented two arguments related to Plaintiff's Title VII claims. First, Defendant contended that Plaintiff failed to "sufficiently allege she exhausted her administrative remedies." [Doc. 3-1, p. 3].[1] Second, Defendant argued

---

[1] After considering Defendant's arguments on the exhaustion point, the Court informed the parties of its

5

that Plaintiff's Complaint fails to state a claim of discrimination or retaliation.

### A.     Discrimination Claim

To establish an employment discrimination claim, a plaintiff must allege that an employer intentionally discriminated against her based on a protected characteristic. *Walker v. NationsBank*, 53 F.3d 1548, 1556 (11th Cir. 1995). A plaintiff can show intentional discrimination through either direct evidence or circumstantial evidence. *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529, 540 (11th Cir. 2019) (citing *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010)). "Under the *McDonnell Douglas* framework, a plaintiff can create an inference of discrimination through his prima facie case." *Vessells v. Atlanta Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802). For a *prima facie* case of sex discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for his position; (3) she suffered an adverse employment action; and (4) she was either replaced by a person outside her protected class or treated less favorably than a "similarly situated" individual outside her protected class. *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).

That being said, the Supreme Court has made it clear that "an employment

---

intent to convert Defendant's Motion to Dismiss into a summary-judgment motion on the narrow issue of exhaustion. [Doc. 7]. In response, Plaintiff presented evidence of her exhaustion by offering her initial EEOC charge and the right-to-sue letter she received. [Doc. 8]. After Plaintiff placed that evidence in the record, Defendant conceded the issue. [Doc. 9].

discrimination plaintiff need not plead a *prima facie* case of discrimination [under the *McDonnell Douglas* framework] . . . to survive a motion to dismiss[.]" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). "This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). To elaborate on this point, the Eleventh Circuit has held that "to state a [sex discrimination] claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional . . . discrimination.'" *Id.* (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 1239, 1246 (11th Cir. 2015)); *see Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *2 (11th Cir. Jan. 3, 2022) (stating that "[t]he pertinent question, as always, is whether [plaintiff's] complaint provides enough factual matter (taken as true) to suggest intentional . . . discrimination[]"). Thus, Plaintiff need only allege facts sufficient to state a plausible claim that Defendant violated Title VII. *See Jacob v. Biando*, 592 F. App'x 838, 840–41 (11th Cir. 2014).

In her Complaint, Plaintiff alleges facts showing that after she and a male coworker went on a date, Defendant treated her differently than her male counterpart Lyons. [Doc. 1, ¶ 7]. Even more, Defendant knew that Lyons sexually harassed Plaintiff and took no action except to ostracize Plaintiff and demote her from the safety position. [*Id.* at ¶¶ 8–9]. Eventually, Defendant fired Plaintiff, but did not take any adverse action against Lyons. [*Id.* at ¶ 11]. These facts, taken as true, state—at the very least—a

plausible claim of discrimination.² Indeed, it takes two to tango, but only one of these dancers got fired. Based on Plaintiff's Complaint, Lyons received more favorable treatment for the same "violation"³ of company policy. *See Robinson v. Dako N. Am., Inc.*, No. 8:10CV00278-T-24-AEP, 2010 WL 1433420, at *3 (M.D. Fla. Apr. 9, 2010) (holding that a plaintiff survived a dismissal by showing the defendant fired him for violating a company "relationship policy," but did not terminate a female employee for the same violation).⁴ Therefore, the Court concludes that Plaintiff stated enough factual allegations to create an inference of discrimination sufficient to survive dismissal. Accordingly, Defendant's Motion is **DENIED** as to Plaintiff's Title VII discrimination claim.

  **B.** **Retaliation Claim**

Generally, to establish a claim for retaliation, a plaintiff must show: (1) statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Dixon v. Hallmark Cos.*, 627 F.3d 849, 856 (11th Cir. 2010). To satisfy the protected activity prong, a plaintiff must "explicitly

---

² Obviously, there may come a time to quibble over legitimate, non-discriminatory reasons that might exist for Plaintiff's termination. However, this stage is not the appropriate venue for such an analysis.

³ Plaintiff contends that no official company policy prohibited coworkers from being in romantic relationships with each other. [Doc. 1, ¶ 8].

⁴ Defendant's arguments that because the decision-makers were female, Plaintiff is somehow foreclosed from alleging discrimination are unavailing. To be clear, "nothing in Title VII necessarily bars a claim of discrimination because of sex merely because the plaintiff and the defendant . . . are of the same sex." *McMillian v. Postmaster Gen., U.S. Postal Serv.*, 634 F. App'x 274, 276 (11th Cir. 2015). Although the female decision-makers are not "defendants" in this case, the same logic applies.

or implicitly communicat[e] a belief that the [challenged] practice constitutes unlawful employment discrimination." *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (internal citations omitted). It is clear that "[u]nfair treatment, absent discrimination based on [sex], is not an unlawful employment practice under Title VII." *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995).

Plaintiff alleges that following Lyons' harassment, she and her manager met with Defendant's human resources department to discuss the issue. [Doc. 1, ¶ 8]. Following that meeting, Plaintiff asserts that other employees treated her differently and even mentioned that "higher ups" told them not to talk to Plaintiff. [*Id.* at ¶ 9]. As noted above, Defendant ultimately fired Plaintiff.

Plaintiff meets the first element of her retaliation claim because she participated in protected activity by complaining to her employer about Lyons' purported sexual harassment. *See Olson v. Lowe's Home Ctrs. Inc.*, 130 F. App'x 380, 393 (11th Cir. 2005) ("Olson engaged in statutorily protected activity by complaining about the sexual harassment."). As to the second element, Plaintiff obviously faced an adverse employment action—Defendant fired her. Therefore, to carry her *prima facie* case of retaliation, Plaintiff need only show a causal relationship between her protected activity and the adverse action. However, that determination is not well-suited for the motion-to-dismiss stage. *Cf. Jarrard v. Moats*, No. 4:20-CV-2-MLB, 2021 WL 1192948, at *14 (N.D. Ga. Mar. 30, 2021) ("[T]he causation element of a retaliation claim . . . is an issue of fact

9

not suitable for disposition upon a motion to dismiss." (internal quotations omitted));

see also *Miles v. Penn. Dep't of Conservation & Nat. Res.*, No. 1:08-CV-1561, 2009 WL 506371, at *7 (M.D. Pa. Feb. 27, 2009) ("In other words, causation is a context-specific inquiry requiring proof not available at the pleadings stage[.]"); *O'Toole v. Cnty. of Orange*, 255 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) ("Plaintiff thus satisfies the relatively loose causation requirements at the 12(b)(6) stage, as the Court recognizes that the motivation behind each alleged retaliatory action is a question of fact."). Therefore, the Court **DENIES** Defendant's Motion as to Plaintiff's retaliation claim.

**II.     State Law Claims**

Plaintiff also raises multiple state law claims—namely, negligent training, supervision, retention, and failure to implement effective policies. [Doc. 1, p. 5]. However, there is no state law basis for discrimination claims of this sort. Even though O.C.G.A. § 34-7-20 deals with whether an employer may be liable for hiring or retaining an employee the employer knows is not suited for the particular employment, "Plaintiffs essentially attempt to create a [state-law] negligence cause of action for discrimination in employment." *Graham v. City of Duluth*, 759 S.E.2d 645, 650–51 (Ga. Ct. App. 2014); *Alford v. Cosmyl, Inc.*, 209 F. Supp. 2d 1361, 1372 (M.D. Ga. 2002).

Judge Land perfectly addressed this exact issue:

> Acceptance of Plaintiffs' creative legal theory would result in making virtually every employment discrimination claim actionable under [state-law] negligence principles. If the State of Georgia desires or intends to provide its citizens with a [state-law] remedy for employment

discrimination, it has the means to do so through legislation enacted by the Georgia General Assembly. Absent a statutory or clear common law duty, th[e] Court has no authority to abandon judicial restraint and create a new [state-law] cause of action for employment discrimination.

*Alford*, 209 F. Supp. 2d at 1372. Accordingly, the Court **GRANTS** Defendant's Motion **in part** and **DISMISSES** Plaintiff's state law claims as they relate to Defendant's alleged discrimination.[5]

However, Plaintiff's claims that Defendant negligently trained, supervised, and retained Lyons—with knowledge of his alleged prior harassment accusations from other female employees—may continue for further factual development. To be sure, Georgia law allows claims based on an employer's action or inaction in the face of an employee's "propensity for sexual misconduct." *Doe v. Fulton-DeKalb Hosp. Auth.*, 628 F.3d 1325, 1337 (11th Cir. 2010) (citing *Alpharetta First United Methodist Church v. Stewart*, 472 S.E.2d 532, 536 (Ga. App. 1996)). However, those claims must arise from Defendant's actions or inaction, "by which it negligently or intentionally allowed the harassment to occur." *Travis Pruitt & Assocs., P.C. v. Hooper*, 625 S.E.2d 445, 450 (Ga. App. 2005). In other words, Defendant cannot be held liable under a theory of respondeat superior without a showing that Lyons' acts were done in furtherance of Defendant's business. *Id.* Plaintiff made no such allegations. But a cause of action for

---

[5] *Cf. Holston v. Sports Auth., Inc.*, 136 F. Supp. 2d 1319, *adopted in pertinent part*, 136 F. Supp. 2d 1319 (N.D. Ga. 2000), *aff'd without op.*, 251 F.3d 164 (11th Cir. 2001) (explaining that a claim for negligent hiring or retention based upon racial discrimination fails to state a claim under Georgia law, noting that negligence claims can arise only from common law duties, and there is no common law duty to prevent discrimination in employment).

11

"negligence against an employer may be stated if the employer . . . should have known of an employee's reputation for sexual [harassment] and that it was foreseeable that the employee would engage in sexual harassment of a fellow employee[,] but he was continued in his employment." *Cox v. Brazo*, 303 S.E.2d 71, 73 (Ga. App. 1983), *aff'd*, 307 S.E.2d 474 (Ga. 1983).

Here, Plaintiff alleges that her supervisor told her that Lyons previously harassed other female employees. [Doc. 1, ¶ 8]. Therefore, there is at least enough factual allegations, taken as true, to show that Defendant knew—or reasonably should have known—that Lyons harassed other female coworkers before, and Defendant did nothing to prevent him from doing it again. At this stage, that is enough to state a claim for relief under Georgia's negligent retention, training, and supervision causes of action.

## CONCLUSION

Based upon the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss [Doc. 3]. The Court **GRANTS** the Motion as it relates to Plaintiff's state law claims for discrimination. The Court **DENIES** the Motion as it relates to Plaintiff's Title VII discrimination and retaliation claims, and Plaintiff's state-law claims based on Defendant's actions regarding Lyons' sexual harassment. To be hyper-clear, that means the following claims may continue for factual development: Plaintiff's Title VII sex discrimination claim under a single-motive theory, or motivating factor theory; Plaintiff's retaliation claim; and Plaintiff's state-law claims based on

Defendant's response to Lyons' sexual harassment.[6]

**SO ORDERED**, this 9th day of June, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] Plaintiff's Complaint does not state a claim for hostile work environment; therefore, she may not proceed under that theory. First, Plaintiff does not enumerate a separate count for a hostile work environment claim. *Copeland v. Ga. Dep't of Juv. Just.*, No. 7:12-CV-24 HL, 2013 WL 1296778, at *13 (M.D. Ga. Mar. 27, 2013) ("The Court and opposing parties should not have to guess whether a hostile work environment claim is hiding in a discrimination count. Plaintiff should have articulated a separate count in her complaint alleging the hostile work environment claim."); *Palmer v. Albertson's LLC*, 418 F. App'x 885, 889 (11th Cir. 2011) ("Even if those two counts contained sufficient factual allegations on which to base a plausible hostile work environment claim . . . [the plaintiff] did not articulate that he was making that claim. He should have asserted such a claim and done so in a separate count so that [the defendant could] discern what he is claiming and frame a responsive pleading.") (internal quotations omitted). Second, Plaintiff's Complaint does not set out the facts required to plead a hostile work environment claim. *See Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1026 (11th Cir. 2008) (reciting the elements of a hostile work environment claim). Namely, Plaintiff failed to allege "repeated instances of intimidation, insult, or ridicule that together amount to particularly severe or pervasive harassment." *Brannon v. Sec'y, Dep't of Veterans Affs.*, No. 22-10838, 2023 WL 1161129, at *7 (11th Cir. Jan. 31, 2023).